IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ENTERGY ARKANSAS, INC., an Arkansas corporation; ENTERGY GULF STATES, INC., a Texas corporation; ENTERGY LOUISIANA, INC., a Louisiana corporation; NEBRASKA PUBLIC POWER DISTRICT, a public corporation and political subdivision of the State of Nebraska; OMAHA PUBLIC POWER DISTRICT, a public corporation and political subdivision of the State of Nebraska; and WOLF CREEK NUCLEAR OPERATING CORPORATION, a Delaware corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 4:06CV3101<br><br>**MEMORANDUM AND ORDER** |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| CENTRAL INTERSTATE LOW-LEVEL RADIOACTIVE WASTE COMMISSION, | ) ) ) ) ) | |
| Defendant. | ) | |

     Large generators of power (the "Major Generators") have sued the Central Interstate Low-Level Radioactive Waste Commission. They claim that I should impose a resulting or constructive trust with respect to five million dollars held by the Commission. Resolving this case on cross-motions for summary judgment, I decide that judgment should be entered for the Commission. My reasons for this decision are set forth below.

## I.  BACKGROUND

There are no material facts in dispute. The statement of facts set forth in the respective briefs of the parties may be (and are now) accepted as true.[1] In a telephone conference on January 8, 2007, I confirmed the foregoing with the parties' lawyers. That said, the most important facts, taken mainly from the "uncontroverted facts" of the pretrial conference order,[2] are these:

1.  Plaintiff Entergy Arkansas, Inc. (formerly known as Arkansas Power & Light Company), an Arkansas corporation, is the owner of Arkansas Nuclear One, Units 1 and 2, a nuclear power generating plant located near Russellville, Arkansas.

2.  Plaintiff Entergy Gulf States, Inc. (formerly known as Gulf States Utilities Company), a Texas corporation, is the owner of River Bend Power Station, a nuclear power generating plant located near Baton Rouge, Louisiana.

3.  Plaintiff Entergy Louisiana, Inc. (formerly known as Louisiana Power & Light Company), a Louisiana corporation, is the owner of Waterford 3, a nuclear power generating plant located in Saint Charles Parish, Louisiana.

4.  Plaintiff Nebraska Public Power District, a public corporation and political subdivision of the State of Nebraska, is the owner of Cooper Nuclear Station, a nuclear power generating plant located near Brownville, Nebraska.

---

[1] The parties do argue about whether a statement made by a lawyer on behalf of the Major Generators was settlement talk that must be disregarded or whether it is good evidence that the Major Generators are acting disingenuously. To make it easy, I have not given that evidence any significance.

[2] Filing 34 ¶¶ (B)1-38, at 2-9.

5. Plaintiff Omaha Public Power District, a public corporation and political subdivision of the State of Nebraska, is the owner of Fort Calhoun Nuclear Station, a nuclear power generating plant located in Washington County, Nebraska.

6. Plaintiff Wolf Creek Nuclear Operating Corporation, a Delaware corporation, is the operator of the Wolf Creek Generating Station, a nuclear power generating plant located near Burlington, Kansas, pursuant to a contract with Kansas Gas and Electric Company, Kansas City Power & Light Company, and Kansas Electric Power Cooperative, Inc.

7. Plaintiffs generate low-level radioactive waste ("Waste") as an unavoidable incident to the production of electric power.

8. Defendant Central Interstate Low-Level Radioactive Waste Commission (the "Commission"), is an entity created pursuant to the Compact.

9. The Commission maintains its headquarters in Lincoln, Nebraska.

10. The Commission is currently comprised of four persons, each appointed as a Commissioner to represent his or her state. The Party States currently comprising the Commission are Arkansas, Louisiana, Oklahoma, and Kansas.

11. In 1980, the Congress enacted the Low-Level Radioactive Waste Policy Act, Pub. L. 96-573, and in 1985, the Congress enacted the Low-Level Radioactive Waste Policy Amendments Act of 1985, Pub. L. 99-240 (collectively, the "Federal Act"). The Federal Act established the responsibility of the states to dispose of Waste, including that generated by nuclear power generating plants. Under the Federal Act, states are authorized and encouraged to form regional interstate compacts to develop Waste disposal facilities.

12. The provision of a long-term, reliable disposal facility for Waste produced by Plaintiffs was among the reasons for the adoption and approval of the Compact.

13. Pursuant to the authority granted them under the Federal Act, the Party States hereinbefore identified entered into the Compact together with the State of Nebraska, which has since withdrawn from the Compact.

14. On or about January 15, 1986, as part of the Omnibus Low-Level Radioactive Waste Interstate Compact Consent Act, Pub. L. 99-240, Title II, 99 Stat. 1859, Congress consented to the Compact, thereby making it a federal law.

15. The Compact was entered into as a cooperative effort among the Party States to provide economical management of Waste produced within the Party States. Under the Compact, the Commission is authorized to require the Party States to process all applications for permits and licenses required for a disposal facility within a reasonable period of time from the time a completed license application is submitted.

16. Under Article III(f) of the Compact, each Party State has an express right to rely on the good-faith performance by each other Party State of the obligations imposed by the Compact.

17. On or about December 14, 1987, the Commission approved selection of the State of Nebraska as the "host" state for a low-level radioactive waste disposal facility (the "Facility"). At or about the same time, Nebraska's then Governor established a set of conditions for Nebraska's selection as the host state, including a requirement for reimbursement of the State's costs to plan, license, and regulate the Facility.

18.     To fulfill its obligations under the Compact, on or about January 29, 1988, the Commission entered into an agreement with U.S. Ecology, Inc. ("USE"), as subsequently amended (the "USE Agreement"), for siting, licensing, developing, constructing, and operating the Facility to be located in the State of Nebraska, consistent with the provisions of the Compact and the Federal Act.

19.     The Commission lacked the funds necessary to carry out the obligations set forth above.  As a result, on or about January 29, 1988, the Plaintiffs, in order to effectuate the Federal Act and the responsibilities of the Party States thereunder, and in reliance on the Compact and the USE Agreement, entered into an initial agreement with the Commission whereby the Plaintiffs agreed to advance prepayments to the Commission for future disposal services (the "Prepayments") in an aggregate amount up to 10.1 million dollars.  The Prepayments were to be used by the Commission to meet its pre-licensing payment commitments to USE under the USE Agreement and to reimburse license review costs of the State (the "Pre-Licensing Costs") and its contractors and consultants.

20.     On or about July 3, 1990, in reliance on the USE Agreement and the Compact, the Plaintiffs and the Commission entered into a revised agreement (the "Funding Agreement") to provide additional Prepayments for the Pre-Licensing Costs of the Facility up to the amount of 25.5 million dollars (such amount including the previously committed 10.1 million dollars).

21.     In exchange for the Prepayments, the Commission agreed in the Funding Agreement to use its best efforts to obtain siting, licensing, development, construction, and operation of the Facility in accordance with the meaning and intent of the Compact and the Federal Act.

22.     Under the Funding Agreement, the allocable shares of the Prepayments are as follows:

| | |
|---|---|
| Entergy Arkansas, Inc. | 20.48% |
| Entergy Gulf States, Inc. | 17.22% |
| Entergy Louisiana, Inc. | 16.01% |
| Nebraska Public Power District | 16.06% |
| Omaha Public Power District | 13.55% |
| Wolf Creek Nuclear Operation Corporation | 16.23% |

23. The Funding Agreement was amended on repeated occasions, including but not limited to, July 1991, January 1992, August 1993, July 1994, October 1997, and May 1998. All such amendments were made in reliance on the USE Agreement and the Compact for the purpose of increasing the authorized Prepayments to allow for continued funding of the Pre-Licensing Costs of the Facility.

24. Plaintiffs advanced Prepayments in a total amount of $88,554,291.77 to the Commission under the Funding Agreement, as amended. These Prepayments were rendered worthless by the State of Nebraska's breach of its good-faith obligation in the Facility licensing proceedings.

25. On September 30, 2002, this Court entered a Memorandum and Order (the "Judgment") granting the Commission judgment against the State of Nebraska in the sum of $151,408,240.37, plus post-judgment interest as provided by law, due to the State of Nebraska's breach of its "good-faith" obligation under Art. III(f) of the Compact when processing a low-level radioactive waste disposal facility licence application pursuant to Art. V(e)(2) of the Compact. A substantial portion of the Judgment was attributable to the Plaintiffs' Prepayments under the Funding Agreement. Entergy Arkansas, Inc. v. State of Nebraska, 226 F. Supp. 2d 1047 (D. Neb. 2002), aff'd 358 F.3d 528 (8th Cir. 2004).

26. On September 30, 2002, this Court entered a Memorandum and Order dismissing as premature the claims of the Entergy entities and Wolf Creek Nuclear

Operating Corporation against the Commission for the imposition of a constructive trust or a resulting trust with respect to the monies represented by the Commission's Judgment against Nebraska. Entergy Arkansas, Inc. v. State of Nebraska, 226 F. Supp. 2d 1174 (D. Neb. 2002).

27. On August 17, 2004, this Court entered a Consent Judgment incorporating and approving a Settlement Agreement between the Commission and the State of Nebraska. Entergy Arkansas, Inc. v. State of Nebraska, No. 4:98CV3411, Filing 612 (D. Neb. 2004). This Settlement Agreement established the State's settlement obligation as a payment to the Commission in the amount of $140,541,076.78, plus interest accruing on that amount or any unpaid amounts at a specified rate until completion of the State's settlement payment obligations.

28. On August 1, 2005, the State of Nebraska paid $145,811,367.17 to the Commission in full satisfaction of its obligations under the Consent Judgment. The Commission filed a Satisfaction of Consent Judgment and Satisfaction of Original Judgment on August 2, 2005.

29. On or about January 19, 2005, the Commission's attorney notified Plaintiffs that the Commission would be creating a "settlement fund" on August 1, 2005, from the proceeds of the Nebraska settlement payment, and that any claims as to this fund should be submitted to him on behalf of the Commission.

30. On or about March 25, 2005, Plaintiffs (collectively, for this purpose, the "Major Generators"), submitted a joint claim to the Commission for the total amount of $129,779,407.35. The Major Generators' claim was determined by applying to the anticipated Nebraska settlement payment the portion of the Judgment (89.005%) attributable to the Major Generators' $88,554,291.77 in Prepayments made to the Commission under the Funding Agreement in direct support of the efforts to license

7

a low-level radioactive waste disposal facility, plus the prejudgment interest under the Judgment attributable to the Major Generators' Prepayments.

31.     On July 15, 2005, the Commission adopted a series of Resolutions.

32.     One of the July 15, 2005, Resolutions of the Commission determined that the Major Generators' settlement fund claims totaled $129,745,716.10.  This Resolution approved payment to the Major Generators of $114,745,716.10, while withholding $15,000,000 from the amount the Major Generators claimed to be owed from the Commission.  This Resolution further provided that the Commission was making no final decision with respect to the $15,000,000.

33.     Other Resolutions of the Commission dated July 15, 2005, approved the claims of various other parties to the settlement fund based on the amount of their contributions to the licensing effort and the prejudgment interest thereon.  The Commission directed that such approved claims be paid in their entirety and without any retention or withholding.

34.     By Resolution dated July 15, 2005, the Commission also determined that no need currently exists for the siting, construction, and operation of a low-level radioactive waste disposal facility in the Compact region and that no currently available or anticipated funds shall be utilized in pursuit of a disposal facility within the Compact region.  Nonetheless, the Commission has decided to remain in existence and is endeavoring to ascertain the needs of large and small generators of nuclear waste, and it has planned to maintain readily available funds so that it may independently pursue affiliation or membership in a sited compact and otherwise assist the member states regarding issues related to low-level nuclear waste.[3]

---

[3]For example, see the report entitled "Planning for the Future" prepared by the Commission's Executive Consultant, who formerly served as the chair of the

35. On or about August 1, 2005, upon receiving the State's settlement payment of $145,811,367.17, the Commission distributed $114,745,716.10 to the Major Generators in accordance with a formula set forth in the Major Generators' claim to the Commission. This formula reflected the individual contributions of the Major Generators under the Funding Agreement, as adjusted for individual Major Generator litigation costs.

36. On February 24, 2006, the Commission approved distribution of an additional $10,000,000 to the Major Generators in payment of their claims from the Nebraska settlement funds, but determined to withhold the remaining $5,000,000 from the amount the Major Generators claim to be owed by the Commission from the settlement fund.

37. On or about March 23, 2006, James J. O'Connell, the Commission's Executive Consultant, notified the Major Generators that the Commission's retention of the remaining $5,000,000 was a "final decision" with respect to the Major Generators' claims before the Commission, "though not a final decision regarding the ultimate disposition of the settlement funds retained."

38. As of November 22, 2006, the Central Interstate Low-Level Radioactive Waste Commission has received interest on all of the settlement funds it received from Nebraska, including the funds it has retained, in the amount of $514,377.37.

---

Commission. (Filing 29, Joint Stipulation Regarding Motion for Summary Judgment; Filing 30, Ex. 19 at CM/ECF pages 42-43.) The author of this report, James O'Connell, has experience as a practicing lawyer, a pharmacist, a chief executive of large hospital, and he formerly served as Secretary of Health and Environment for the State of Kansas. <u>Entergy</u>, 226 F. Supp. 2d at 1181 n.5. I have previously seen Mr. O'Connell testify, and he is both very credible and extremely thoughtful.

9

## *II. ANALYSIS*

To expedite matters,[4] I assume that the reader understands the extraordinarily complex history of the earlier serial litigation that forms the backdrop for this suit. And, while we are talking about assumptions, the parties assume that Nebraska law applies here and, for the most part, so do I.[5]

The Major Generators assert that I should impose a "resulting trust" or a "constructive trust" on the five million dollars retained by the Commission. I respectfully disagree.

### *A Brief Look at Nebraska Law*

I next briefly highlight Nebraska law as it pertains to the trust theories asserted by the Major Generators:

\*  Under Nebraska law, a "resulting trust" arises by implication, on the assumption that the parties intended that a trust would exist although they did not express their intent to create one, while a "constructive trust" arises when one has acquired legal title to property under such circumstances that in good conscience he or she may not retain the beneficial interest in the property. See, e.g., Wait v.

---

[4]While I have not counted, the written opinions in the earlier cases take up several hundreds of pages.

[5]In an earlier suit, dismissed as premature but predicated upon similar claims, the parties and I made the same assumption. Entergy, 226 F. Supp. 2d at 1179 ("Because the contracts require that the law of the 'host state' should be applied (Ex. 13 at 71-72 ¶ 10.20; Ex. 15 at 18 ¶ 25), and the host state was Nebraska, the parties have assumed that Nebraska law applies. Except as otherwise indicated, I have assumed that their assumption is correct.").

Cornette, 612 N.W.2d 905, 910-11 (Neb. 2000) (defining the doctrines and collecting cases).

* Under Nebraska law, the imposition of a constructive trust or a resulting trust is an equitable action. See, e.g., Brtek v. Cihal, 515 N.W.2d 628, 633 (Neb. 1994).

* Under Nebraska law, a "party seeking the remedy of a constructive trust has the burden to establish the factual foundation, by evidence which is clear and convincing, required for a constructive trust." Id. at 639.

* Under Nebraska law, the "burden is upon the one claiming the existence of a resulting trust to establish the facts upon which it is based by clear and satisfactory evidence." Id. at 640.

### *The Law Applied*

The Major Generators have failed in their burden to convince me that the elements of a "constructive trust" or a "resulting trust" exist. On these points, the evidence is not "clear," "convincing," or "satisfactory." Brtek, 515 N.W.2d at 633, 639-40. Albeit briefly, I will elaborate.

First, there is nothing inequitable about the Commission keeping $5 million out of more than $145 million obtained by the Commission from the State of Nebraska as a result of the judgment I previously entered for the Commission. Given that (1) the Major Generators have recovered all their principal and a lot of interest; (2) the Commission is still in existence, will continue in existence for the foreseeable future and has an arguable need for money; and (3) the Commission itself suffered damages, there is nothing unconscionable about the Commission keeping less than 4 percent of the judgment proceeds.

11

In particular, I reject the suggestions of the Major Generators that the Commission is nothing more than a "pass-through" entity for the Major Generators, and therefore it has no independent legal entitlement to the money or that the Commission has suffered no independent damages, and therefore it is not equitably entitled to any of the judgment proceeds. Indeed, in the opinion that resulted in payment of the disputed money, I rejected these very arguments when they were asserted by Nebraska and opposed by the Commission and most of the Major Generators. For example, see Entergy, 226 F. Supp. 2d at 1148[6] (footnote omitted), 1151[7] & 1160.[8]

Second, the evidence does not show, as the plaintiffs assert, that the parties <u>understood</u> that the Major Generators would have a reimbursement right with interest upon failure of the project. Specific to the facts of this case, there is not the slightest reason to think that the parties had any understanding as to what would happen in the event the project failed because Nebraska breached its obligation of good faith, and

---

[6]Stating that:

> As to the second theory that the Commission is but a stalking horse for the power companies, the funding agreements between the generators and the Commission do not support that claim. (Exs. 14, 15, 16 (amendments 1-7).) On the contrary, there is no evidence that the generators have the power to control the disposition of the proceeds of a money judgment in the hands of the Commission. Still further, under the Compact, the Commission has obligations to the member states and otherwise which are far more expansive than any contractual obligations they may have to the generators.

[7]Noting that the Commission lost "the very significant value . . . of Nebraska's 'good faith' performance . . . ."

[8]Lamenting that I "cannot . . . make the Commission whole."

a court decided to award damages plus interest to the Commission instead of ordering licensing.[9]

Third, I am unconvinced by two of the specific examples cited by the Major Generators as unfair conduct on the part of the Commission. The Major Generators complain that the Nebraska Public Power District ("NPPD") and the Omaha Public Power District ("OPPD") will receive no help from the Commission because Nebraska has withdrawn from the Compact and therefore it is unfair for the Commission to keep "their portion" of the $5 million settlement proceeds. Setting to one side the fact that NPPD and OPPD have no legal right to the proceeds in the first place, if NPPD and OPPD suffer because Nebraska has withdrawn from the Compact, their gripe is with Nebraska and not the Commission.

The Major Generators also complain that smaller claimants (like the contractor, US Ecology) have received full payment of their claims, and thus it is inequitable to treat the big boys less favorably. Where, as here, there is not enough money to fund the demands of all the claimants, and still keep the Commission in operation, I see nothing unfair about allocating the deficiency to the corporations that had (and have) the most to gain if the Commission was (or is) ultimately successful. In short, the saying, "To whom much has been given, much will be expected" fits nicely as a response to this argument.[10]

Fourth, and finally, I reject the notion that I should second-guess the Commission about whether it really needs the $5 million. As I have said before, "the

---

[9]This is true whether one concentrates on the contracts and the course of dealing between the parties or whether one looks at all the evidence lumped together.

[10]This includes more than $124 million that the Major Generators have now received from the Commission. That sum is far in excess of their "investment" of about $89 million.

13

Commission is a creature of federal law charged with very important federal duties . . . ." Entergy, 226 F. Supp. 2d at 1181. I know of no law that allows me to substitute my opinion for a facially reasonable decision of the Commission like the one that is manifestly present here.

Accordingly,

IT IS ORDERED:

1. The defendant Commission's motion (filing 28) for summary judgment is granted.

2. The plaintiff Major Generators' motion (filing 32) for summary judgment is denied.

3. By separate document, judgment will be entered for the defendant Commission and against the plaintiff Major Generators, providing that the Major Generators shall take nothing and their suit is dismissed with prejudice.

January 11, 2007.

BY THE COURT:
s/ *Richard G. Kopf*
United States District Judge